UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **PETERBILT MOTORS COMPANY,** )<br>)<br>    **Plaintiff,** )<br>)<br>**v.** )<br>)<br>)<br>**INTERNATIONAL UNION, UNITED AUTOMOBILE,** )<br>**AEROSPACE AND AGRICULTURAL IMPLEMENT** )<br>**WORKERS OF AMERICA, U.A.W. AND** )<br>**LOCAL NO. 1832, U.A.W.** )<br>)<br>    **Defendants.** ) | No. 3:04-1033 |

## MEMORANDUM

Plaintiff Peterbilt Motors Company ("Peterbilt") filed this suit against Defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and Local No. 1832 UAW (collectively the "Union") seeking an order vacating an arbitration award pursuant to § 301(a) of the Labor Management Relations Act of 1947 ("LMRA"). Defendants filed their Answer and Counterclaim seeking enforcement of the award. After filing its Answer to the Counter-claim, Peterbilt filed a Motion for Summary Judgment (Doc. No. 7). For the reasons set forth below, Peterbilt's Motion for Summary Judgment is GRANTED.

### I. FACTUAL BACKGROUND

Peterbilt operates a truck manufacturing plant in Madison, TN. The Union is a unincorporated association and labor organization. The Union is the recognized and certified collective bargaining representative of all production and maintenance employees employed at the Madison, TN location.

Since 1973, Peterbilt and the Union have been parties to a number of collective bargaining agreements. The Collective Bargaining Agreement("CBA") at issue was effective from November 24, 1998 to August 30, 2002. The CBA contains a grievance and arbitration procedure.

On January 29, 2001, Delmas May, a Peterbilt employee in the Madison plant and member of the bargaining unit represented by the Union, transferred to a new job because he could not remain in

his previous assignment due to his seniority. After the transfer, Mr. May advised his supervisor that he was having difficulty performing his new job. On January 30, 2001, Mr. May presented Peterbilt with a note from his physician, which stated, "Please excuse the above from any strenuous activity until 2-26-01." Peterbilt told Mr. May and the Union that, based on the doctor's note, Mr. May would not be permitted to perform his job duties. Peterbilt also asked for clarification as to Mr. May's specific limitations. Mr. May left the plant before the start of the shift on January 30, 2001 and never returned to work at Peterbilt. Mr. May's inability to work was a result of a non-occupational illness and he was under a doctor's care at all times. It is Peterbilt's policy to prohibit employees from working with temporary medical restrictions that are unrelated to an on-the-job injury or sensitivity.

The CBA, in relevant part, provides that "the Company [Peterbilt] agrees to provide all eligible employees the health and welfare benefits listed in Schedule C, attached hereto and made a part of this agreement." (CBA Art. 22.01, Compl. Ex. A at 56.) Schedule C provides that "upon successful completion of the probationary period, all employees shall be eligible to become members of the group insurance plans." (*Id.* at 63.) Following the list of benefits provided by Peterbilt, the Schedule states:

> THE INFORMATION PRESENTED IN SCHEDULE C IS ONLY A SUMMARY. COMPLETE DETAILS OF THE BENEFITS, BENEFIT PAYMENTS AND CONDITIONS FOR PAYMENT ARE CONTAINED IN THE PLAN DOCUMENTS. IF THERE ARE ANY INCONSISTENCIES BETWEEN THIS SUMMARY AND THE PLAN DOCUMENTS, THOSE DOCUMENTS ARE THE FINAL AUTHORITY.

(*Id.* at 72) (emphasis in original).

The Accident & Sickness ("A&S") benefits under Schedule C provides that "members receive a benefit of $365 per week if they are unable to work due to a non-occupational accident or sickness, including pregnancy, and are under a doctor's care." (*Id.* at 65.) The A&S benefits are governed by the Employee Retirement Income Security Act ("ERISA"). Since January 1, 1970, Peterbilt has contracted with the Prudential Insurance Company of America ("Prudential") as both the insurer and claims administrator for Schedule C benefits including A&S benefits.

On January 31, 2001, Mr. May filed a claim for A&S. Prudential initially approved the claim and Mr. May received A&S benefits through May 13, 2001. However, by a letter dated May 25, 2001, Prudential notified Mr. May that because there was insufficient medical evidence to support total

2

disability beyond May 16, 2001, his benefits were terminated.[1]  Prudential outlined Mr. May's right to appeal its decision and the method for submitting an appeal.

Mr. May filed his first appeal of the denial of his A&S claim with Prudential on June 19, 2001. Prudential again denied Mr. May's A&S claim by a letter dated July 24, 2001.  In the same letter, Mr. May was offered the opportunity to present additional medical information to support his claim.  On November 5, 2001, the Union, on Mr. May's behalf, submitted a second appeal to Prudential concerning the denial of disability benefits.

On October 31, 2001, Mr. May was involved in an automobile accident and subsequently passed away on December 31, 2001.

On January 14, 2002, Prudential denied Mr. May's second A&S appeal by a letter and outlined the procedures for filing a third and final appeal including submission of additional medical information. No third appeal was filed.  Mr. May's estate claims that they never got the January 14, 2002 letter.

On June 18, 2001, the Union filed Grievance No. TM-215 on behalf of Mr. May alleging that Peterbilt unjustly denied Mr. May A&S benefits.  A grievance is defined in the CBA as "any controversy between the Company and the Union or an employee regarding the interpretation or application of any provision of this Agreement."  (CBA Art. 7.01, Compl. Ex. A at 17.)  On July 2, 2001, the Union filed Grievance No. TM-217 challenging Peterbilt's decision to place Mr. May on an involuntary leave of absence.

The Peterbilt management and the Union failed to resolve the grievances pursuant to the CBA's grievance procedure and the Union appealed the grievances to arbitration as provided by the CBA's four-step grievance procedure.  (*See* CBA Art. 7, Compl. Ex. A at 17.)  Article 7.02(a) provides that "the arbitrator's decision shall be final and binding on all parties, and he shall have no power to modify, change, add to, or subtract from, the terms and conditions of this agreement, except as may be specifically specified elsewhere."  (*Id.* at 20.)

An arbitration hearing was held on February 4, 2004 before Arbitrator Jack Clarke.  At the hearing, Peterbilt asserted that the denial of A&S benefits was not subject to the CBA grievance and

---

[1]The termination date was subsequently corrected to May 13, 2001.

arbitration procedure. On August 27, 2004, the Arbitrator issued an Opinion and Award granting both grievances. The Arbitrator held, among other things, that (1) Grievance No. TM-215 is arbitrable; (2) the determination as to whether Mr. May was entitled to A&S benefits is not preempted by ERISA; and (3) Mr. May satisfied all conditions necessary for the A&S benefits afforded him by the CBA. (Arbitrator's Op. and Award, Compl. Ex. I at 18.)

Peterbilt seeks to vacate the Opinion and Award on Grievance No. TM-215, which concerns eligibility for A&S benefits under the CBA.

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 587-88 (1986).

However, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmoving party must come forward with some significant probative evidence to support its claim. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element, on which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

### B. Review of Arbitration Award

Judicial review of an arbitrator's award is necessarily limited. *Appalachian Reg'l Healthcare, Inc. v. United Steelworkers of Am.*, 245 F.3d 601, 604 (6th Cir. 2001). Reviewing courts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed. *Beacon Journal Publ'g v. Akron Newspaper Guild*, 114 F.3d 596, 599 (6th Cir. 1997) (citing *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29 (1987)). Courts review the arbitrator's decision only to determine whether the arbitrator was "arguably construing or applying the contract and was acting within the scope of his authority." *Id.*

4

(citing *Misco*, 484 U.S. at 38).  If the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely the arbitrator's "own brand of justice," the award is legitimate.  *Id.* (citing *United Steelworkers of Am. v. Enter. Wheel & Car Co.*, 363 U.S. 593, 597 (1960)).

However, an arbitrator does not have unfettered discretion and when he or she departs from arguably construing the contract, the court must vacate the award. *Id.* at 600 (citing *Enter. Wheel & Car*, 363 U.S. at 597, 580).

An arbitrator's award fails to draw its essence from the agreement when: (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on "general considerations of fairness and equity" instead of the exact terms of the agreement.  *Dallas & Mavis Forwarding Co. v. General Drivers, Warehousemen & Helpers*, 972 F.2d 129, 134 (6th Cir. 1992) (quoting *Cement Divisions, Nat'l Gypsum Co. v. United Steelworkers of Am.*, 793 F.2d 759, 766 (6th Cir. 1986)).

### III.  ANALYSIS

In its summary judgment motion, Peterbilt contends that because the A&S benefits under the CBA is governed by ERISA, the administration of A&S benefit claims is not properly subject to the grievance and arbitration language and, therefore, the arbitrator exceeded his authority in contravention of ERISA and the plain language of the CBA.  More specifically, Peterbilt claims, first, that Mr. May's claim has been preempted by ERISA.  Due to the preemption plan administration and benefit decisions are simply not subject to state law tort or breach of contract claims.  Second, Peterbilt argues, the parties did not agree to arbitration as the method of appealing claim denials under the ERISA plan and the CBA provides an alternative method of dispute resolution, *i.e.*, the internal appeal process between Prudential and the claimant.  Third, Peterbilt argues that the Arbitrator exceeded his authority in awarding Grievance No. TM-215 because the award conflicts with express provisions in the CBA.

**A.  ERISA Preemption**

The Court finds that Peterbilt's assertion that lawsuits concerning benefit claim denials are completely preempted by ERISA has no bearing on the present case.  In so arguing, Peterbilt relies on

5

*Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 62-63 (1987). However, Peterbilt's reliance on *Metropolitan Life Insurance* is misplaced. The ERISA preemptions discussed in *Metropolitan Life Insurance* concerned ERISA preemption over state common law causes of actions filed in state courts, which called for removal from state court to federal court; it did not address the issue of ERISA preemption in an arbitration setting.

Although the U.S. Supreme Court has not decided whether ERISA preempts arbitration of disputes arising under ERISA, a number of circuits have held that the Congress did not intend to prohibit arbitration of ERISA claims. *See Bird v. Shearson Lehman / American Express, Inc.*, 926 F.2d 116, 119-20 (2d Cir.1991); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* Inc., 7 F.3d 1110, 1119 (3d Cir. 1993); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478 (8th Cir. 1988); *Williams v. Imhoff*, 203 F.3d 758 (10th Cir. 2000).

In the Sixth Circuit, the court of appeals held that compulsory arbitration provision in the ERISA plan divested the district court of jurisdiction over claims that sought benefits under the same plan. *See Simon v. Pfizer Inc.*, 398 F.3d 765, 772 (6th Cir. 2005). The *Simon* court did not adopt a blanket rule that disputes arising under ERISA are subject to arbitration under the FAA. However, it decided that the arbitrability of claims arising under ERISA are determined under the longstanding principle in the Sixth Circuit that arbitration is a matter of contract between parties and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration. *Id.* at 775. Therefore, in determining whether a claim arising under ERISA is arbitrable or not, the central inquiry becomes whether the arbitration provision in each specific case is broad enough to encompass the claims at issue. *See id.* Consequently, the Court finds that ERISA does not preempt arbitration of disputes that arise under ERISA.

**B. Arbitrability of Grievance No. TM-215**

    **1. Standard of Review**

The question of arbitrability — whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance— is undeniably an issue for judicial determination. *Vic Wertz Distrib. Co. v. Teamsters Local 1038*, 898 F.2d 1136, 1139 (6th Cir. 1990) (quoting *AT&T Techs., Inc. v.*

*Commc'ns Workers*, 475 U.S. 643, 649 (1986)). Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court and not the arbitrator. *Id.* However, when the parties have clearly and unmistakably submitted the issue of arbitrability to the arbitrator without reservation, courts review the arbitrator's decision on arbitrability under the same deferential standard employed when reviewing an arbitrator's ruling on the merits.[2] *Id.* at 1140. In such cases, the arbitrator's decision on arbitrability will be affirmed unless it fails to draw its essence from the collective bargaining agreement. *Id.* (citing *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890, 891 (6th Cir. 1989)). In determining the arbitrability of a claim, the court is not to consider the merits of the underlying claim. *United Steelworkers of Am. v. Mead Co.*, 21 F.3d 128, 131 (6th Cir. 1994).

### 2. Arbitrability of Prudential's Denial of A&S Benefits

Courts favor arbitration as an effective alternative dispute resolution mechanism. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578-583 (1960); *The Timken Co. v. United Steelworkers of Am.*, 492 F.2d 1178, 1180 (6th Cir. 1974); *Jackson Purchase Rural Elec. Coop. Ass'n v. Local Union 816, Int'l Bhd. of Elec. Workers*, 646 F.2d 264, 268 (6th Cir. 1981). Reviewing courts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed. *Beacon Journal Publ'g* at 599.

However, a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration. *Mead* at. 131. Where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

In the present case, the Arbitrator acknowledged that Prudential is not subject to arbitration in

---

[2]In its Response to Peterbilt's summary judgment motion, the Union claims that because Peterbilt submitted this issue to arbitration without reserving its right to challenge the arbitrability, it has waived the issue of arbitrability to this court for *de novo* consideration. The Court finds this issue moot as Peterbilt made it clear in its Reply that it is not seeking *de novo* review from this court.

7

accordance with Article 7 of the 1998 Agreement [the CBA]. (Arbitrator's Op. and Award, Compl. Ex. I at 18.) Then the Arbitrator went on to state that if the only obligation the CBA imposed on Peterbilt regarding A&S benefits were to provide insurance, the Arbitrator might conclude that ERISA preempted his power to determine whether the grievant was entitled to A&S benefits. (*See id.*) However, the Arbitrator found that, because there was a separate and independent obligation on Peterbilt to provide the employees with A&S benefits in addition to the A&S insurance as listed in Schedule C, Grievance No. TM-215 was arbitrable. (*See id.* at 18-19.)

Before the Court turns to the question of whether the CBA imposed a separate and independent obligation on Peterbilt to provide benefits, the Court concludes that the grievance between Mr. May and Prudential arising from Prudential's decision on Mr. May's A&S benefits is not arbitrable. Although the CBA has a broad arbitration clause which defines a grievance as any controversy regarding the interpretation or application of any provision of the CBA, the CBA also makes it clear that a grievance is a controversy between "the Company" and "the Union or an employee." Prudential, who had the authority to determine an employee's eligibility for the A&S benefits, is not a party to the CBA, and therefore may not be forced into arbitration.[3] Therefore, absent a separate and independent obligation on Peterbilt to provide A&S benefits, Grievance No. TM-215 is not arbitrable.[4]

### 3. The Arbitrator's Finding of a Separate and Independent Obligation to Provide Benefits

To support his conclusion that Grievance No. TM-215 is arbitrable under the CBA, the Arbitrator found that Peterbilt had a separate and independent obligation to provide the employees with benefits listed in Schedule C in addition to the insurance coverage. The Arbitrator reasoned that if one read Schedule C of the Agreement in isolation, he or she might conclude that the only obligation imposed on Peterbilt regarding A&S benefits was to obtain and make available appropriate insurance.

---

[3]This finding is also supported by the Arbitrator's acknowledgment that Prudential is clearly not subject to arbitration in accordance with Article 7 of the CBA. (Arbitrator's Op. and Award, Compl. Ex. I at 18.)

[4]The Court notes that because the Union had no contractual right to arbitrate any disputes between the employees and Prudential, had the Arbitrator concluded that Grievance No. TM-215 was arbitrable even if Peterbilt did not have a separate and independent obligation to provide A&S benefits, the Award would have failed to draw its essence from the CBA, and therefore would have been vacated.

8

(Arbitrator's Op. and Award, Compl. Ex. I at 18.) However, according to the Arbitrator, if one were to read Schedule C in conjunction with Article 22.01, the proper conclusion would be that Peterbilt did not merely promise to provide insurance but also obligated itself to provide the health and welfare benefits listed in Schedule C. (*Id.* at 18-19.) The Arbitrator further reasoned that if the drafters of the CBA intended to impose no obligation on Peterbilt other than making insurance available, then they would have used the word "insurance" instead of "benefits" in the first sentence of Article 22.01. (*Id.* at 19.) Therefore, the Arbitrator concluded, because Grievance No. TM-215 does not arise under the ERISA plan but under Peterbilt's separate and independent promise to provide employees with A&S benefits, it is a controversy regarding interpretation or application of the CBA. The Court does not agree.

The Arbitrator correctly held that Schedule C has to be read in conjunction with Article 22.01. However, the Arbitrator failed to consider Article 22.01 in conjunction with Schedule C, which clearly limits the scope of Article 22.01. Article 22.01 states that the Company [Peterbilt] agrees to provide all eligible employees the health and welfare benefits listed in Schedule C, attached hereto and made apart of this agreement. Schedule C provides that upon successful completion of the probationary period, all employees shall be eligible to become members of the group insurance plans. Then Schedule C states, "the following benefits are provided." The Accident & Sickness Insurance is one of the numerous benefits listed in Schedule C. It is clear from the language of Article 22.01 and Schedule C that the CBA has used the words benefits and insurance interchangeably.

Furthermore, it is commonly acknowledged that getting certain insurance through an employer is part of the benefits provided by the employer. In other words, when you become an employee eligible for the benefits offered by the employer, you become eligible to get insurance such as the A&S Insurance provided by Peterbilt and administered by Prudential.

Therefore, the Court finds that under the plain language of the CBA, Article 22.01 does not impose a separate and independent obligation on Peterbilt to provide the benefits listed in Schedule C in addition to the obligation to provide the insurance listed in the same schedule.

For the reasons stated above, the Court finds that the Arbitrator's finding that Peterbilt had an obligation to pay eligible employees benefits listed in Schedule C in addition to providing insurance not

9

only imposes additional requirements not expressly provided for in the CBA but also is not rationally supported by or derived from the agreement. Consequently, the Court finds that the Arbitrator's award failed to draw its essence from the CBA and the Arbitrator exceeded his authority in determining that Grievance No. TM-215 is arbitrable. As the Arbitrator's Award failed to draw its essence from the agreement, the Award must be vacated.

**C. Award of Grievance No. TM-215**

Even assuming that Grievance No. TM-215 is arbitrable, the Arbitrator's award of Grievance No. TM-215 would still be vacated as the award fails to draw its essence from the CBA.

In finding whether Mr. May satisfied all conditions necessary for the A&S benefits afforded him by Peterbilt's separate and independent obligation, the Arbitrator relied on the language in Schedule C. In making such determination, the Arbitrator found that Mr. May had to prove that he was unable to work due to a non-occupational accident or sickness and that he was under the doctor's care as laid out in Schedule C. Because Mr. May had shown that he met those two conditions, the Arbitrator determined that Mr. May had met all necessary conditions.

However, Schedule C clearly provides that the information presented in Schedule C is only a summary; that complete details of the benefits are contained in the plan documents; and that if there are any inconsistencies between the summary and the plan documents, those documents are the final authority. Because Schedule C makes it unequivocal that it is merely a summary, if the Arbitrator wanted to implement the separate and independent benefits imposed by Article 22.01 according to the conditions Schedule C requires, he should have referred to the Plan document itself to determine whether Mr. May satisfied all the requirements to be eligible for the benefits. In finding for Mr. May's eligibility for separate and independent A&S benefits, the Arbitrator modified the CBA by subtracting from the terms and conditions of the agreement and, as a result, the award was in conflict with the express terms of the agreement. Consequently, the Court finds that the award failed to draw its essence from the CBA.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED and the

10

Arbitration Award is VACATED.

An appropriate ORDER will enter.

_____
Senior Judge Thomas A. Wiseman, Jr.
United States District Court for the
Middle District of Tennessee